Joe **FREITAS**, Appellant,

v.

**PACIFIC-ATLANTIC STEAMSHIP COMPANY**, a corporation, and Marine Terminals Corporation, Appellees.

No. 13902.

United States Court of Appeals,
Ninth Circuit.

Jan. 14, 1955.

Gladstein, Andersen & Leonard, San Francisco, Cal., for appellant.

John H. Black, Edward R. Kay, Appel, Lieberman & Leonard, Boyd, Taylor & Reynolds, Fred G. Nave, San Francisco, Cal., for appellees.

Before HEALY and FEE, Circuit Judges, and DRIVER, District Judge.

HEALY, Circuit Judge.

Appellant sued for damages for personal injuries allegedly caused by the unseaworthiness of appellee's Victory ship, the SS Montana. A jury was empaneled to hear the case. Upon the conclusion of appellant's proof the trial court granted appellee's motion for a dismissal, and judgment was entered thereon. Thus the primary question be-

fore us is whether there was evidence of unseaworthiness requiring submission of the issue.

At the time of the accident the Montana was being unloaded by an independent stevedoring firm, namely Marine Terminals Corporation. Appellant was one of the group of stevedores employed by Marine Terminals in the discharge of the ship's cargo. The preliminary arrangements of the ship's gear essential to the discharge, including the removal of hatch covers and strongbacks at the appropriate deck level, were made by the stevedoring gang. The hatches through which the unloading was carried on were covered with hatch boards when closed. Large steel strongbacks supported the hatch boards. Strongbacks rest in vertical slots on the hatch combings, and those on the Montana were secured in their slots by a ratchet-type lock at each end.

In preparation for the removal of cargo the longshoremen uncovered a portion of the main deck hatch and then removed two of the five strongbacks covering the hatch on the shelter deck, the next deck below. Three of the strongbacks and the hatch boards covering them were left in place. The cargo was being discharged from the lower 'tween deck, the second deck below the main deck, and a winch was being used by members of the longshore gang to raise the cargo to the main deck. Lighting conditions in the hold were very good and the winch operator could look directly down into it. A scow flat containing two handcars for use in cargo removal had been lowered into the hold and had been pushed forward by the stevedores out of their way into the covered portion of the hold. The injury occurred after appellant and his work partner had attached four cables to the scow, which with the handcars aboard was to be lifted from the lower 'tween deck through the two partially uncovered hatches to the main deck. Because the scow flat was under the portion of the shelter deck hatch which had not been uncovered, the winch pulled it up at an angle; and as a result the shackle connecting the four cables to the hook caught against the lower side of the middle strongback of the shelter deck hatch. The winch operator failed to perceive the hooked condition until the strongback had been pulled from its supporting slots. The strongback and the hatch boards which it had been supporting fell to the lower 'tween deck, and one of the hatch boards struck appellant in the back.

The complaint alleged unseaworthiness in three respects, (1) that the locking mechanism of the strongback was defective and unseaworthy, (2) that at the time of the accident the strongback was not properly locked in position, and (3) that the strongback itself was in a faulty and defective condition and did not fit into the slots designed for it. Appellant produced no evidence in support of any of these claims, nor was there evidence tending to show that proper equipment could have withstood the pull of the winch. The evidence established that the locks were in their locked position, and that the same type of lock is used on a number of other ships. It was also shown that a purpose of such locks is to prevent accidents of the nature occurring here, and that a strongback may be pulled from its slots if one of its locks is defective.

The contention is that the jury could have inferred from the fact of the accident that either or both the locking devices were defective, or that the strongback was warped or too short to enable it to fit snugly into its supporting slots. Accordingly appellant says that the court erred in taking the case from the jury. His counsel relies largely on the holding of this court in Petterson v. Alaska SS Company, 205 F.2d 478, 479, where a stevedore had been denied recovery for injuries claimed to be caused by a vessel's unseaworthiness. The injuries resulted from the breaking of a block while cargo was being loaded. The trial court had found that the block was used

" 'in a customary and usual manner' and that it 'was of a type ordinarily and customarily used and proper for the use to which it was being put' " on the occasion in question. In reversing, this court held that from the foregoing finding it was a logical inference that the block would not have broken unless it was defective, that is unless it was unseaworthy.

■ The Petterson case is inapposite. Unlike the situation in Petterson, the accident in this instance was directly brought about by an improper, if not foolhardy, use of the ship's gear. Cf. The Daisy, 9 Cir., 282 F. 261. We are not disposed to extend the Petterson doctrine to situations where, in the course of proving the injury, facts or circumstances are developed tending to exonerate the ship. The burden of proof of unseaworthiness rested on the appellant. There was no showing that if a locked strongback is in a seaworthy condition it can not be dislodged by the force improperly and unnecessarily applied to it here. Nor, conversely, was there evidence that the winches were incapable of generating sufficient pressure to dislodge a locked strongback in a seaworthy condition. The law does not impose upon the shipowner the burden of an insurer nor is the owner under a duty to provide an accident-proof ship. Lake v. Standard Fruit & Steamship Co., 2 Cir., 185 F.2d 354; Cookingham v. United States, 3 Cir., 184 F.2d 213. In the condition of the record there was nothing other than speculation on which to base a verdict for the plaintiff. Had the cause been submitted to the jury and a verdict against the shipowner returned, the court, in our opinion, would have been obliged to set it aside.

Error is claimed with respect to a ruling of the court on a question put by appellant's counsel to the winch operator, Coulter. Coulter was asked: "Now, in your experience have you ever run across occasions when these locks were in a locked position and because of rust or some other condition you couldn't unlock the lock?" The question was objected to as immaterial and not within the issues, and the objection was sustained. Counsel stated that the purpose of his interrogation was to show that "on occasions in this gentleman's experience these hatch beams can be lifted out without even unlocking the locks; in other words, they don't work." Haywood v. Jones & Laughlin Steel Corporation, 3 Cir., 205 F.2d 775, is cited as supporting the view that exclusion of the evidence was error.

■ Apart from the proposition that sometimes in his experience the witness had run across strongback locks which were rusty or unworkable, the purpose of the offer was anything but clear. There was no offer to prove that the type of lock in question was generally found defective or inefficient. Such an offer would of course have borne materially on the issue being tried. But the proposed evidence was purely collateral. Like similar excursions into collateral realms, the admission of such evidence would necessitate lengthy inquiry into the similarity or dissimilarity of conditions and would have a tendency to confuse rather than enlighten the jury. As remarked in United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 230, 60 S.Ct. 811, 847, 84 L.Ed. 1129, "The trial court has a wide range for discretion in the exclusion of such [collateral] evidence." See to the same effect Union Stock Yard & Transit Co. v. United States, 308 U.S. 213, 223–224, 60 S.Ct. 193, 84 L.Ed. 198. In our opinion the exclusionary ruling does not warrant a reversal.

Affirmed.