Felice GRILLEA, Appellant,

v.

UNITED STATES and National Shipping Authority, Appellees.

No. 23609.

United States Court of Appeals
Second Circuit.

April 26, 1956.

Rehearing Denied May 4, 1956.

Robert Klonsky, New York City, for appellant.

Joseph M. Cunningham, Bronxville, N. Y., Thomas F. Feeney, Brooklyn, N. Y., Paul W. Williams, U. S. Atty., New York City, and Kirlin Campbell & Keating, New York City, for appellees.

Before HAND, SWAN and FRANK, Circuit Judges.

HAND, Circuit Judge.

The libellant has moved for a rehearing upon our ruling that he did not elect to sue "in rem" until after we had suggested it to him at the end of our opinion. We have granted a rehearing on that issue, and, as will appear below, we think that there was enough evidence to support an "election." Moreover, since the merits of the claim of a lien against the ship had not been at issue on the appeal, we have felt obliged to allow briefs to be filed on that issue also, and therefore the appeal comes before us in these two aspects. First, we will say why we think that the suit may stand as one "in rem"; and then we will take up the merits.

The libel, filed on April 1, 1952—which was not in the printed record—alleged first that the ship "is now or" (is) "about to come within the jurisdiction of the United States and this Honorable Court"; and, second that the libellant resided and was domiciled "within the jurisdiction of this Honorable Court." The second allegation was false, as appears from the libellant's answer to interrogatories that he had lived for fifteen years in Brooklyn; but the answer, filed in July admitted that the "vessel from time to time has come within the jurisdiction of the United States and the Southern District of New York," which was not only enough, independently of the allegation of residence, to allow the suit to proceed "in personam," but also enough to allow it to proceed "in rem," if the libellant so elected "in the libel." [1] The libellant argues that the allegation about the ship must have been meant as such an election, and that the suit had therefore the double aspect of a suit "in personam" and of one "in rem," as 46 U.S.C.A. § 743 permits. In Schnell v.

1. Warren v. United States, 2 Cir., 179 F. 2d 919.

United States, 2 Cir., 166 F.2d 479, the libel had contained no allegation that the ship was within the United States when it was filed, and there was therefore nothing to which we could ascribe any election that the suit proceed "in rem." At the trial the libellant did move that he should be allowed so to "elect," and at that time the ship had come into the United States (or at least so we assumed, note at page 482) which the Supreme Court held in Nahmeh v. United States, 267 U.S. 122, 45 S.Ct. 277, 69 L.Ed. 536, was enough to support a suit "in rem." Our refusal to treat this as an election to proceed "in rem" was based upon the absence in the libel of any "allegation that during the pendency of the suit the vessel would be within the jurisdiction of the court."

■ The question here is therefore whether the allegation present in the libel as to the whereabouts of the ship may be treated as an election under § 743. It is true, as we have just said, that that allegation would have supported the venue of the suit as one "in personam" in the Southern District of New York, if the libellant failed to prove residence in that district, as he might well apprehend that he would. However, as such an alternative support for venue the allegation need only have been that the ship was, or would be, within the district; it was not necessary to add that she was, or would be, within the United States. We should indeed disregard the addition if it could have had no independent function, for the Southern District of New York obviously is in the United States; but not only was it wholly redundant to the venue of the suit regarded as one "in personam," but it was essential to the jurisdiction of the court in a suit "in rem," as the Supreme Court

held in Blamberg Bros. v. United States, 260 U.S. 452, 43 S.Ct. 179, 67 L.Ed. 346. The Court in Nahmeh v. United States, supra, 267 U.S. 122, 45 S.Ct. 277, did indeed hold that we had been mistaken in The Isonomia, 2 Cir., 285 F. 516, in supposing that the ship must be within the district, but it left standing the statement that for jurisdiction "in rem," she must be somewhere within the United States.

■ So it follows that the first allegation of the libel combined an allegation, necessary to jurisdiction "in rem," but otherwise completely redundant, with another allegation necessary to venue both "in rem" and "in personam." That we think may serve as an "election" without overruling our decision in Schnell v. United States, supra, 166 F.2d 479. True it is that the libellant almost certainly could not have had this in mind when he filed the libel, but for the reasons just given we are not disposed to defeat the suit on that account. We do not forget that the change has been asserted more than two years after the claim arose: and we need not say whether that might not have been too late, if the claim based on a lien, was upon a different "cause of action" from the "cause of action" "in personam." Since, however, in either event the injury was the same, the claims are the same, though each depends upon a different congeries of "operative facts." [2] We are to remember that the Suits in Admiralty Act is not to be construed with the same jealousy that ordinarily circumscribes the consent of the United States to be sued;[3] and that, moreover, it is in general true that statutes affecting the interests of seamen, enjoy a particularly latitudinary interpretation.[4] For the foregoing reasons we hold that there

---

**2.** Baltimore S. S. Co. v. Phillips, 274 U.S. 316, 321, 322, 47 S.Ct. 600, 71 L.Ed. 1069; American F. & Cas. Co. v. Finn, 341 U.S. 6, 12, 13, 71 S.Ct. 534, 95 L.Ed. 702.

**3.** Nahmeh v. United States, 267 U.S. 122, 126, 45 S.Ct. 277, 69 L.Ed. 536; Eastern Transportation Co. v. United States, 272

U.S. 675, 689, 690, 47 S.Ct. 289, 71 L. Ed. 472; Canadian Aviator Ltd. v. United States, 324 U.S. 215, 222, 65 S.Ct. 639, 89 L.Ed. 901; American Stevedores v. Porello, 330 U.S. 446, 453, 67 S.Ct. 847, 91 L.Ed. 1011.

**4.** Jamison v. Encarnacion, 281 U.S. 635, 640, 50 S.Ct. 440, 74 L.Ed. 1082; Cortes

was an election and we proceed to the merits.

■■ The claim is based upon the theory that, as soon as the wrong hatch cover was placed over the "pad-eye" the ship became *pro tanto* unseaworthy, and that, when the libellant stepped upon it and it gave way beneath him, he came within the decision of the Supreme Court in Seas Shipping Company v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, which extended the doctrine of The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760, to longshoremen, while loading or discharging a ship. The respondents answer that a ship's seaworthiness has from time immemorial been measured by her fitness for the service in hull, gear and stowage, that in all these respects the ship at bar was well provided, and that the libellant's injuries were due solely to the negligence of himself, or his companion, Di Donna, or both, in selecting the wrong hatch cover to place over the "pad-eye." It is indeed true that to constitute unseaworthiness the defect must be in the ship's hull, gear or stowage, and even as to these she need not be perfectly, but only "reasonably," fit for her service.[5] However, it is at times hard to say whether a defect in hull or gear that arises as a momentary step or phase in the progress of work on board should be considered as an incident in a continuous course of operation, which will fasten liability upon the owner only in case it is negligent, or as an unfitness of the ship that makes her *pro tanto* unseaworthy. The respondents plausibly argue, for instance, that when a strongback is dislodged by the negligence of a winchman, or of those who direct him,[6] or when some one of the crew carelessly turns a lever that drops a boat from its davits,[7] there is a moment, however short, during which the ship is unfit and during which her unfitness causes the injury; yet on such occasions she is not deemed unseaworthy. On the other hand, if the wrong hatch cover had been placed over the "pad-eye" the day before the libellant stepped on it, this ship would have been unseaworthy; for that was in effect just what we decided in Mollica v. Compania Sud Americana, 2 Cir., 202 F. 2d 25. There the plaintiff fell in an ill lighted hold, and we allowed recovery because the mate had failed to order the "lampman" to rig the necessary extra lights, plenty of which were on board. It is true that that decision turned upon whether the unseaworthiness arose before the owner had given up control to the stevedores, which we there erroneously thought to be a condition upon liability; but we all agreed that she was unseaworthy, although she was completely fitted with adequate gear and her only defect was that those responsible for setting it in place had failed to do so.

■ ■ It would be futile to try to draw any line between situations in which the defect is only an incident in a continuous operation, and those in which some intermediate step is to be taken as making the ship unseaworthy. Nevertheless, it is necessary to separate the two situations, even though each case must turn on its particular circumstances. In the case at bar although the libellant and his companion, Di Donna, had been those who laid the wrong hatch cover over the "pad-eye" only a short time before he fell, we think that enough time had elapsed to result in unseaworthiness. The cover was one of two or three that they had already put in place on the after section of the hatch; it had become part of the platform across which the two

---

v. Baltimore Insular Line, 287 U.S. 367, 377, 53 S.Ct. 173, 77 L.Ed. 368; Aguilar v. Standard Oil Co., 318 U.S. 724, 733, 734, 63 S.Ct. 930, 87 L.Ed. 1107.

5. The Silvia, 171 U.S. 462, 19 S.Ct. 7, 43 L.Ed. 241; The Southwark, 191 U.S. 1, 24 S.Ct. 1, 48 L.Ed. 65; Boudoin v. Lykes Bros. S. S. Co., 348 U.S. 336, 75 S.Ct.

382, 99 L.Ed. 354; Poignant v. United States, 2 Cir., 225 F.2d 595.

6. Berti v. Compagnie de Navigation etc., 2 Cir., 213 F.2d 397; Freitas v. Pacific-Atlantic S. S. Co., 9 Cir., 218 F.2d 562.

7. Manhat v. United States, 2 Cir., 220 F.2d 143.

walked to gain access to the middle section on which they were going to place another cover. The misplaced cover had therefore become as much a part of the 'tweendeck for continued prosecution of the work, as though it had been permanently fixed in place. It may appear strange that a longshoreman, who has the status of a seaman, should be allowed to recover because of unfitness of the ship arising from his own conduct in whole or in part. However, there is in this nothing inconsistent with the nature of the liability because it is imposed regardless of fault; to the prescribed extent the owner is an insurer, though he may have no means of learning of, or correcting, the defect. Indeed, as to these it is a kind of "Workmen's Compensation Act"; though limited by the value of the ship and by the fact that it only covers injuries caused by the defects that we have mentioned. The following passage from Seas Shipping Co. v. Sieracki, 328 U.S. 85, 94, 66 S.Ct. 872, 877, 90 L. Ed. 1099, expresses the considerations that lie behind it. The owner

> "is in position, as the worker is not, to distribute the loss in the shipping community which receives the service and should bear its cost.

> "These and other considerations arising from the hazards which maritime service places on men who perform it, rather than any consensual basis of responsibility, have been the paramount influences dictating the shipowner's liability for unseaworthiness as well as its absolute character. It is essentially a species of liability without fault, analogous to other well known instances in our law. * * * It is a form of absolute duty owing to all within the range of its humanitarian policy."

The Court recently reaffirmed this doctrine in Alaska S. S. Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798, and we have since followed suit in Poignant v. United States, 2 Cir., 225 F.2d 595. Seas Shipping Co. v. Sieracki, supra, also held that the contributory negligence of a seaman is not a defense to an action based on the ship's unseaworthiness; although apparently it is a proper factor in fixing the amount of the recovery. Pope & Talbot v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143. Be that as it may, Judge Ryan expressly found that the libellant was free from negligence, and the respondents have not challenged the finding.

The respondents also argue that there can be no maritime lien without a liability "in personam" for which it is security; and that, since we have found them free of personal liability, because the unseaworthiness arose after the demise, no lien can be imposed upon the ship. They cite as an authority for this some passages from The Western Maid, 257 U.S. 419, 42 S.Ct. 159, 66 L.Ed. 299; but the issue there was altogether foreign to the case at bar. All that the Supreme Court held was that since the United States had never consented to assume any liability for the torts of its agents, no maritime liens for collision could arise against ships owned by it, or demised to it, which could be enforced after the ships had passed to private persons, or after the demises had come to an end. In other words, the immunity of the United States extended not only to direct suits against itself, but to property that it owned absolutely, or as demisee, for conduct that, if committed by private persons, would have made them, or the property liable. It is still true that ships of the United States are as immune from maritime liens as they were before the Suits in Admiralty Act was passed, but § 743 gives relief "in personam" "wherever it shall appear that had the vessel or cargo been privately owned and possessed a libel in rem might have been maintained." Therefore, we are to decide whether a suit will lie "in rem" by precisely the same rules as though only private persons had been concerned in the event.

That does not indeed answer the question whether a maritime lien can be imposed upon a ship for a claim on which no jural person is liable "in per-

sonam.". Moreover, although in the case at bar the demisee was liable under the Longshoremen's and Harbor Workers' Act, § 901 et seq., Title 33, U.S.C.A., the liability was only for compensation—a claim different from that in suit, both in kind and amount. So far as we have found, this is a question that has never come up in the books, although, as *res integra*, we see no reason why a person's property should never be liable unless he or someone else is liable "in personam." That would amount to saying that there should be no limited liability without fault, although unlimited liability without fault is not infrequently imposed.[8] Be that as it may, a demisee who is under only a limited liability to his employee may make himself liable to the demisor for full recovery in case the demisor is so liable to the employee. That will be true if the demisee has broken a contract with the demisor and the injuries to the employee measure the damages for the breach.[9] In the case at bar the demisee had made such a contract, for the charter (Clause 27) contained the following promise: "The Charterer shall indemnify the Owner against any lien * * * arising out of the operation of the Vessels by the Charterer." Therefore, even though one thought it unjust as between the two that the demisor should be liable for full damages when the demisee was not, this clause is an answer.

The decree will be reversed and the cause remanded with directions to enter a decree for the libellant for $55,000 with costs.

Decree reversed, cause remanded for further proceedings in accordance with the foregoing opinion.

SWAN, Circuit Judge (dissenting).

I agree with so much of my brothers' opinion as holds that there was an elec-tion to sue *in rem*. I am unable to agree with their decision on the merits.

The libel charged that Grillea was injured by reason of "negligence of the respondents, and the unseaworthiness of the vessel." Judge Ryan stated the question of law presented by the case as follows:

"Is the owner of a vessel on bareboat charter chargeable to a longshoreman with an unsafe condition aboard when that condition arose solely because of the negligent use of the vessel's appurtenances, where that negligent use has been by longshoremen who have come aboard by employment of the bareboat charterer?"

He found as facts that safe and adequate hatch covers were provided by the shipowner and that the unsafe condition "arose solely by reason of the negligent handling of these otherwise safe hatch covers." My brothers accept these findings of fact and apparently agree with Judge Ryan's conclusion that the demisor was not liable *in personam* for the negligence of the longshoremen employed by the demisee. But they hold that the unsafe condition created by such negligence rendered the ship unseaworthy, even though the misplacing of the hatch board occurred "as an incident in a continuous course of operation" in which the plaintiff and his fellow longshoremen were engaged, namely covering the hatch. The long recognized distinction between injuries caused by unseaworthy gear and injuries caused by improper use of proper gear has not, in my opinion, been completely wiped out by the Supreme Court decisions in Sieracki and Petterson. It has recently been applied by this court and by the Ninth Circuit. Berti v. Compagnie de Navigation Cyprien Fabre, 2 Cir., 213 F.2d 397; Manhat v. United States, 2 Cir., 220 F.2d 143, cer-

8. Exner v. Sherman Power Construction Co., 2 Cir., 54 F.2d 510, 80 A.L.R. 686; Moran v. Pittsburgh, etc., Co., 2 Cir., 166 F.2d 908; Restatement of Torts §§ 504–510, 519, 520.

9. Ryan Stevedoring Co. v. Pan-American S. S. Co., 350 U.S. 124, 76 S.Ct. 232.

tiorari denied 349 U.S. 966, 75 S.Ct. 900, 99 L.Ed. 1288; Freitas v. Pacific-Atlantic S. S. Co., 9 Cir., 218 F.2d 562, 564. Under the facts found by Judge Ryan I think that those cases are applicable to the case at bar and that the decree should be affirmed.

### On Petition by the Respondents for a Rehearing.

#### PER CURIAM.

The respondents are right in saying that it was not the libellant and DiDonna who misplaced the cover that later rocked and made the libellant fall. This was misplaced by two other members of the same gang before the libellant and DiDonna walked over it. It is impossible to see what conceivable difference this can make in the result; indeed, if anything, it confirms our ruling.

Petition denied.