Henry GRZYBOWSKI, to his own use and To the Use of TRAVELER'S INSURANCE COMPANY

v.

ARROW BARGE CO., Inc., Defendant & Third-party Plaintiff (NACIREMA OPERATING COMPANY, Inc., Third-party Defendant).

Civ. No. 10072.

United States District Court
D. Maryland.
July 9, 1959.

John J. O'Connor, Jr., Baltimore, Md., for plaintiff.

Randall C. Coleman, Jr., Baltimore, Md., for Arrow Barge Co., Inc.

Jesse Slingluff and Mathias J. DeVito, Baltimore, Md., for Nacirema Operating Co., Inc.

THOMSEN, Chief Judge.

Plaintiff, a longshoreman, has filed a motion for a new trial of this civil action for personal injuries brought by him against the owner of the ship on which he was working when a 5-ton pack of steel sheets which he and other longshoremen were maneuvering into place in the lower hold swung around and pinned him against a bulkhead. Plaintiff claims that the work area was unseaworthy because he and the other longshoremen had used pine jelly soap to lubricate tracks made of dunnage so that the packs could be more easily slid into place in the wings; that the ship was negligent in permitting the stevedoring contractor and its employees to use the soap or in failing to discover that the work area had been rendered slippery thereby; and that he could have avoided the accident if he had not slipped. The shipowner brought in the stevedoring contractor, plaintiff's employer, as a third-party defendant. The evidence showed that it had been customary to use pine jelly soap to assist in loading packs of steel in the port of Baltimore for many years and that the stevedoring contractor kept a supply of the soap on hand for that purpose. The following questions were submitted to a jury and answered as indicated:

"1. Was the S.S. Joseph Feuer at the time and place of the injury complained of unseaworthy as to the No. 4 hold?

"Yes ———— No    X

"2. If the answer to question 1 is 'yes', was such unseaworthiness a proximate cause of the injury sustained by the plaintiff?

"Yes ———— No ————

"3. Was the Arrow Barge Co. or any officer or member of the crew of the S.S. Joseph Feuer negligent in respect to the No. 4 hold?

"Yes ———— No    X

"4. If the answer to question 3 is 'yes', was such negligence a proximate cause of the injury?

"Yes ———— No ————

"5. Was Nacirema Operating Co. negligent in using soap as a lubricant in the No. 4 hold?

"Yes ———— No    X

"6. If the answer to question 5 is 'yes', was such negligence a proximate cause of the injury?

"Yes ———— No ————

"7. Were any of the employees of Nacirema Operating Co. negli-

gent in the manner in which the soap was used in the No. 4 hold?

"Yes ——— No ‗‗X‗‗ ·

"8. If the answer to question 7 is 'yes', was such negligence a proximate cause of the injury?

"Yes ——— No ———

"9. If the answer to question 1 is 'yes', was such unseaworthiness caused by any act of the plaintiff himself?

"Yes ——— No ———

"10. Was the plaintiff negligent?

"Yes ——— No ‗‗X‗‗

"11. If the answer to question 10 is 'yes', was such negligence a proximate cause of the injury?

"Yes ——— No ———

"12. If you find negligence on the part of Mr. Grzybowski and that such negligence was a proximate cause of the injury, to what extent or degree, percentagewise, did such negligence contribute to the happening of the injury?

"———%

"13. At what sum do you assess the damages?

"$———"

■■ Plaintiff's principal contention is that the owner of a vessel is an insurer of the safety of the longshoremen who work on board. He argues that the owner's absolute duty to provide a seaworthy vessel, with appurtenant appliances, requires the shipowner to provide a work area which is *absolutely* safe, whereas the courts have held that it must be *reasonably* safe for the purposes for which it is being used. Ross v. The Zeeland, 4 Cir., 240 F.2d 820, and cases cited. The shipowner's duty to supply a seaworthy ship is an absolute duty in the sense that it is an inalienable, nondelegable and continuing duty, and that proof of an injury caused by the existence of an unseaworthy condition is all that is required to impose liability on the shipowner. But a ship and her owners are not insurers of the safety of men working on board. A vessel need not be free from all cause for mishap; it is enough if she is reasonably fit. The doctrine of unseaworthiness does not extend so far as to require an owner to keep appliances or work spaces which are inherently sound and seaworthy absolutely free at all times from transitory, occasional, or immediate unsafe conditions resulting from their use. The crucial consideration is whether the ship was in all respects pertinent to the injury reasonably fit to permit the plaintiff to perform his tasks aboard the ship with reasonable safety.

The charge to the jury embodied the principles set out above, which have been approved by the Fourth Circuit, in Ross v. The Zeeland, supra, and in Blankenship v. Ellerman's Wilson Line New York, Inc., 4 Cir., 265 F.2d 455, and by other courts in cases cited in those opinions.

Plaintiff relies on the statement by Judge Hand in Grillea v. United States, 2 Cir., 232 F.2d 919, that liability is imposed on the shipowner "regardless of fault"; that "'to the prescribed extent the owner is an insurer, though he may have no means of learning of, or correcting, the defect". 232 F.2d at page 923. Judge Hand, however, had previously indicated what the "prescribed extent" was, saying: "It is indeed true that to constitute unseaworthiness the defect must be in the ship's hull, gear or stowage, and even as to these she need not be perfectly, but only 'reasonably,' fit for her service." 232 F.2d at page 922. Neither the Supreme Court nor the Fourth Circuit has yet approved everything that was said in Grillea, but there is no dissent from the rule that the test is *reasonable* fitness. "The law does not impose upon the shipowner the burden of an insurer nor is the owner under a duty to provide an accident-proof ship." Freitas v. Pacific-Atlantic S.S. Co., 9 Cir., 218 F.2d 562, 564, cited with approval by Judge Soper in Blankenship v. Ellerman's Wilson Line New York, Inc., 4 Cir., 265 F.2d at page 457. Absolute safety cannot be assured in an

extrahazardous occupation; the shipowner is not an insurer against hazards inherent in the work.

▉ In the instant case it was necessary to lower heavy packs of steel into the hold and to stow them in several layers, evenly distributed throughout the hold, in order to secure the proper balance. It was therefore necessary to move some of the packs into the wings, and this required assistance from the longshoremen in the hold. Certain hazards were inherent in the operation, including hazards resulting from the natural swinging of the loads. If the longshoremen had used rollers in this part of the operation, it would have been necessary for them to remove the rollers to prevent shifting of the cargo at sea. If they had attempted to use and remove rollers, or if they had pushed the packs into the wings without some lubrication on the dunnage over which the packs were pushed, or if they had relied entirely on the winch to swing the packs over the particular spaces in which they were to be placed, there might have been a greater danger of injury to the longshoremen than was created by soaping the dunnage, so that the packs could be more easily guided into place. It was for the jury to say whether the method used for easing the 5-ton packs into place was a reasonably safe method under all the circumstances, and whether the use of the soap or the manner in which the soap was used rendered the ship unseaworthy or amounted to negligence on the part of the stevedores of the ship. The plaintiff was not entitled to a directed verdict on the issue of unseaworthiness or the issue of negligence. Nor do I find that the verdict was against the evidence or against the weight of the evidence.

Plaintiff argues that the answers to the several issues were inherently inconsistent; but they were not inconsistent, inherently or otherwise. Plaintiff's witnesses differed considerably among themselves as to just how the accident happened—whether the plaintiff slipped on the dunnage, or jumped onto the pack and fell off. The jury evidently found that the use of the soap did not make the ship unseaworthy, and that plaintiff's injury was caused by the natural swinging of the load, without any negligence on the part of anyone.

Plaintiff's witness Pelligrino was allowed to testify to the various methods available for loading heavy cargo generally, but since he had had no experience in loading packs of steel plates in layers, and conceded that it is the practice of stevedores to use soap or grease in loading drafts of around four or five tons into the wings, he was not allowed to say whether he considered the use of soap or grease to be a safe practice. If expert testimony was called for, his lack of experience with the particular problem disqualified him; if it was a matter within the competence of non-experts, it was a matter to which the jury should apply their own common sense, and no opinion evidence was admissible.

▉ Plaintiff contends that the court "permitted the Defendant and the Third Party Defendant to develop at length the Longshoremen's and Harbor Workers' Compensation Act [33 U.S.C.A. § 901 et seq.] to the serious prejudice of the Plaintiff's case". The record shows that early in the case plaintiff's counsel stated in open court that he had subpoenaed the record from the Deputy Commissioner's office and had it available if anybody needed it. On motion of the attorney for the third-party defendant, plaintiff's employer, the case was entered to the use of its compensation carrier to the extent of the payments which had been made by the carrier for compensation and for medical expenses, Poleski v. Moore-McCormack Lines, D.C., 21 F.R.D. 579, and cases cited. Plaintiff himself had already offered in evidence the amount of the carrier's payments for medical expenses. Thereafter defendant attempted to offer in evidence a number of other papers from the Deputy Commissioner's file. All of plaintiff's objections to these papers were sustained. The medical reports and plaintiff's election to sue were admitted in

evidence, but plaintiff made no objection to them. When counsel for defendant attempted to argue to the jury that if the case were treated as a compensation case, "as we think it ought to be treated", the damages would be such and such, I told the jury that this was not a proper argument. Counsel for *defendant* objected strenuously to the severity of my ruling. I then made a statement to the jury explaining the compensation law and its limited relation to this case, and neither plaintiff nor anyone else took an exception to that statement.

The motion for new trial is hereby overruled.