ANDRES GALBAN, Appellant, v. PENN SHIPPING Co., INC., et al., Respondents.

First Department, December 20, 1960.

*Silas B. Axtell* of counsel (*Harold J. Olliffe* with him on the brief), for appellant.

*Victor S. Cichanowicz* of counsel (*Cichanowicz & Callan,* attorneys), for respondents.

EAGER, J. This is an action by a seaman employed on the vessel *Penn Explorer*, an old American Liberty vessel, to recover damages for personal injuries sustained on the high seas on April 1, 1958, in the course of his duties as a member of the crew of such vessel. He sought recovery against the owners and operators of the vessel under general maritime law on the theory of negligence and on the theory that the owners and operators violated their duty to furnish a seaworthy vessel.

When the vessel embarked from Norfolk, Virginia, on March 21, 1958, about 25 drums or barrels of lubricating oil, weighing about 450 pounds each, were stowed in two separate places on the main deck. Some of the drums were stowed heads up on

both sides, port and starboard, at the mooring winch aft of number five hatch and lashed by manila rope to steam pipe casings and to pad eyes along the aft side of the winch. Other drums were stowed on the aft side of number four hatch, secured in between the winches and also lashed by rope to steam pipe casing and to pad eyes.

The lubricating oil stowed in the drums on the main deck was for use in the engines of the vessel. The engine room below in the vessel had a tank for carrying such oil with a capacity of 60 barrels. To put the oil in the tank, it was necessary to deliver the same into a chute leading from the upper or boat deck directly to the tank in the engine room. This would be done on occasions before the vessel left port. Or, on occasions, the oil would be taken on in drums and stowed on the main deck; and then, later, during the voyage the drums would be hoisted to the boat deck and the contents emptied into the chute leading directly to the tank in the engine room.

It appeared that, at the time of the accident, the oil tank in the engine room contained only approximately 10 barrels of oil. At the beginning of the voyage and at the time of the accident, there was adequate room in the tank for all of the oil which had been placed and was carried in the drums on the main deck. There was testimony that the stowage of the drums of oil on the deck was according to good and acceptable practice. The captain testified that this was "the common practice; temporarily at least"; but he conceded "that the best place to put oil is inside a tank." Clearly, the proper place for the stowage of the oil was the tank in the engine room below, and the failure to place the same therein before or at the beginning of the voyage was not explained.

On the evening before the accident there was a very heavy sea which caused considerable damage to the port boat deck and equipment. The captain, however, testified that the sea was "a little bit more than the normal". As a result of this sea, certain of the drums or barrels of oil became loosened and were rolling around on the main deck. The next morning, after the heavy sea, the plaintiff and other crew members, under direction of their superiors, were engaged in attempting to secure and head up one of said loosened drums of lubricating oil. While so engaged, an unusually high wave came over the ship and the plaintiff was knocked down by the wave, and, by force thereof and of the rolling drum of oil, was thrown against a ladder, sustaining injuries.

It is clear that the duty owing to a seaman to furnish a vessel which is seaworthy is in the nature of an absolute duty, "that

is, one that does not depend upon a showing of fault * * *. Thus, when seaworthiness is at issue, it matters not that the owner may have used all care and diligence in equipping the vessel or that the owner lacked knowledge of the defective condition ". (*Taylor* v. *Central R. R. Co. of N. J.*, 9 A D 2d 101, 103. See, also, *Mitchell* v. *Trawler Racer*, 362 U. S. 539.) And the responsibility of a vessel owner for an unseaworthy condition exists in connection with such a condition arising after the commencement of a voyage. (*Mitchell* v. *Trawler Racer, supra*; *Mahnich* v. *Southern S. S. Co.*, 321 U. S. 96; *Poignant* v. *United States*, 225 F. 2d 595; *Hildebrand* v. *United States*, 226 F. 2d 215; *Grillea* v. *United States*, 232 F. 2d 919.) "There is no suggestion in any of the decisions that the duty is less onerous with respect to an unseaworthy condition arising after the vessel leaves her home port, or that the duty is any less with respect to an unseaworthy condition which may be only temporary." (*Mitchell* v. *Trawler Racer*, *supra*, p. 549.)

In *Poignant* v. *United States* (*supra*) the action was to recover for personal injuries upon the ground of alleged negligence and unseaworthiness. Plaintiff, a stewardess, slipped on an apple skin on the floor of a passageway. It appeared that the apple skin may have been dropped while garbage was being carried along the passageway to be dumped overboard. The trial court found no actual or constructive notice of the presence of the apple skin in the passageway and also found no breach of the warranty of seaworthiness. The Court of Appeals, 2d Circuit, sustained the finding as to the absence of negligence. However, expressly holding that an unseaworthy condition which arises after the voyage has commenced may be a basis for recovery, the court directed a new trial on the issue of seaworthiness. The court held (p. 598) that there were questions of fact on this issue arising from possible inferences " (1) that the absence of garbage chutes on the vessel was the proximate cause of the accident and (2) that comparable vessels generally are provided with such chutes."

The instant case is similar to *Poignant* to the extent that a chute is here involved. In *Poignant*, the absence of a chute was one of the indicated factors in determining whether the vessel was unseaworthy. The instant case is more compelling from the standpoint of liability, in that the vessel here was equipped with the necessary chute which was not used.

In view of the clearly established facts and the applicable law as aforesaid, it would appear that the issues with reference to the alleged unseaworthiness of the vessel were not adequately passed upon by the learned trial court. Such issues were cer-

tainly not properly nor completely disposed of by its findings that the loading of the oil drums " on the deck was an acceptable practice "; that there was " nothing to show that they were secured in a manner to make the vessel unseaworthy "; and that the failure to fill the tank in the engine room " so as not to carry the oil drums on deck was not the proximate cause of the accident." In any event, upon the present record, the conclusion that the plaintiff here had failed to establish the unseaworthiness of the vessel, which conclusion is implicit in the decision of the trial court, was against the weight of the evidence.

Accordingly, the determination of the Appellate Term which affirmed a judgment of the Municipal Court, First District, and which affirmed an order of said court denying a motion for new trial, should be reversed on the law and on the facts and a new trial ordered, with costs to abide the event.

BOTEIN, P. J., RABIN, VALENTE and McNALLY, JJ., concur.

Determination of the Appellate Term unanimously reversed upon the law and upon the facts, the judgment of the Municipal Court vacated, and a new trial ordered, with costs to abide the event.