**Alonzo McKNIGHT, Plaintiff,**

v.

**N. M. PATERSON & SONS, LIMITED, Defendant and Third Party Plaintiff,**

**Nicholson Cleveland Terminal Co., Third Party Defendant.**

**Civ. No. 34787.**

United States District Court
N. D. Ohio, E. D.

Feb. 23, 1960.

S. Eldridge Sampliner, Cleveland, Ohio, for plaintiff.

Scott H. Elder of Johnson, Branand & Jaeger, Cleveland, Ohio, was on the brief for defendant and third-party plaintiff.

Clarence L. Mollison of Hauxhurst, Inglis, Sharp & Cull, Cleveland, Ohio, for third-party defendant.

CONNELL, District Judge.

This cause is before the Court on a motion for summary judgment, filed by Paterson and Sons (hereinafter called Paterson), the defendant and third-party plaintiff in the case, against the plaintiff Alonzo McKnight. Since under Fed. Rules Civ.Proc., Rule 56, 28 U.S.C.A., the pleadings, depositions and admissions on file, together with any affidavits, must show that there is no genuine issue of material fact before a summary judgment can be granted, a brief resume of the settled facts, as shown from the record of the case as a whole, is in order.

McKnight, at the time of the alleged injury, was employed as a longshoreman by the Nicholson Cleveland Terminal Company (hereinafter called Nicholson), a stevedoring contractor and the third-party defendant in this case. At the time in question, the plaintiff was working in the hold of Paterson's vessel, the Humberdoc, assisting in unloading newsprint. There is no question that Nicholson was acting as an independent contractor, and that it had complete control and operation of the unloading process being undertaken at that time. The injury to plaintiff, upon which this action is based, was apparently inflicted as a result of being struck by part of the unloading gear being lowered into the ship's hold by means of a shore-based, Nicholson owned and operated crane. Although the original petition filed in the Cuyahoga County Common Pleas court (the case was removed here by Paterson) alleged that the unloading gear which caused plaintiff's injury was owned by Paterson, subsequent pleadings, especially the deposition of McKnight, the affidavit of the crane operator, and plaintiff's supplemental brief in opposition to this motion clearly show this allegation to be mistaken and without merit. In assuming the facts that are most favorable to plaintiff, as is our duty in resolving this motion, the injury may have occurred either because of a defect in the crane itself, or because of the negligence of the Nicholson-employed signalman stationed on the deck of the ship. But in neither event does a question of fact arise concerning the status of either Nicholson or Paterson as to the unloading process in general, and the ownership, control and location of the crane in particular, and thus the undetermined cause of the injury does

not create, for our purposes, a material issue of fact.

On the above uncontroverted recitation of fact,[1] the Court is faced with two questions of law: 1) Whether the injury suffered by plaintiff was in any way caused by negligence on the part of the vessel owner through its equipment or employees, and 2) whether the vessel Humberdoc was, at the time of the injury, in an unseaworthy condition, which condition materially caused or contributed to the injury of plaintiff?

■■ We will dispose of the negligence issue first. Although plaintiff, by means of an affidavit attached to his reply brief to this motion, alleged negligence on the part of Paterson in allowing Nicholson, the independent stevedoring contractor, to operate a defective crane, the allegation actually is grounded on unseaworthiness. Although a shipowner is liable in negligence for any lack of reasonable care in ascertaining the methods and manner in which an independent contractor carries on his activities, Halecki v. United N. Y. and N. J. Sandy Hook Pilots Ass'n, 2 Cir., 1958, 251 F.2d 708, vacated and remanded on other grounds, 1959, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541, he has neither the right nor the duty to supervise an independent contractor, or to instruct him as to the instrumentalities and methods adopted in the unloading process. Cornec v. Baltimore & Ohio Ry., 4 Cir., 1931, 48 F.2d 497, cited with approval in Revel v. American Export Lines, D.C.Va.1958, 162 F.Supp. 279, affirmed 4 Cir., 1959, 266 F.2d 82. See also Doll v. Scott Paper Co., 3 Cir., 1937, 91 F.2d 860. Even if the injury were caused because the crane was left uncovered the night before, we cannot conceive that "reasonable care" demands that a vessel owner inspect and operate each piece of equipment of an independent contractor to insure that it is in proper working order before it is used in the actual unloading operation. Certainly the crane was the normal, and perhaps the only (see plaintiff's supplemental brief), equipment suitable for use in unloading this type of cargo, and there is absolutely no indication of anything that should have put Paterson on guard for defective brakes on this or any other crane. Since the only negligence in the operation of the crane is attributable to the plaintiff's employer or to his fellow-employee, the owner of the vessel cannot be held responsible for this negligence. Freitas v. Pacific-Atlantic S. S. Co., 9 Cir., 1955, 218 F.2d 562. See also Harrell v. Lykes Bros. S. S. Co., D.C.E.D.La.1958, 165 F.Supp. 125.

■ The allegation of unseaworthiness presents a far more complex problem. It cannot now be denied that longshoremen, though employed by an independent contractor, are, when performing the "ship's service", entitled to the same protection against unseaworthiness that members of the crew doing the same work would receive. Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S. Ct. 872, 90 L.Ed. 1099. To constitute unseaworthiness, the defect must be in the ship's hull, gear or stowage, and even as to these she need not be perfectly, but only reasonably, fit for service, Grillea v. United States, 2 Cir., 1956, 232 F.2d 919. Certainly the duty of unloading a vessel is one in the ship's service and once McKnight came within the protected class, the vessel could not delegate this protective duty to Nicholson, the independent contractor. Seas Shipping Co. v. Sieracki, supra, 328 U.S. at page 100, 66 S.Ct. at page 880. Additionally, a seaman (or one standing in his shoes) is entitled to indemnification for injury caused by unseaworthiness, not only of the vessel itself in its hull, gear and stowage, but also of the vessel's appurtenant appliances and equipment. Mahnich v. Southern S.S. Co., 1944, 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561; The Osceola, 1903, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760; Imperial Oil, Limited

1. Nicholson, the third-party defendant, supports Paterson's motion for summary judgment.

v. Drlik, 6 Cir., 1956, 234 F.2d 4, modifying D.C.N.D.Ohio 1956, 141 F.Supp. 388.

We now turn to what we consider the controlling issue on this motion; i. e., whether the crane and its attached loading gear, if proved defective, will make the Humberdoc unseaworthy so as to hold the vessel and its owner liable to this injured plaintiff. In reaching our decision the court recognizes the fact that although the crane and attached gear were entirely owned and operated by the independent stevedoring contractor, this is not decisive of the question of unseaworthiness. Two recent Supreme Court decisions clearly indicate that a vessel can become unseaworthy even though the equipment making it so was initially brought onto the vessel by an independent contractor without the knowledge of the officers or crew of the vessel, and even though such equipment is expected to remain on the ship only temporarily. See Alaska S.S. Co. v. Petterson, 1954, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798, affirming per curiam and on the basis of Petterson v. Alaska S.S. Co., 9 Cir., 1953, 205 F.2d 478; Rogers v. United States Lines, 1954, 347 U.S. 984, 74 S.Ct. 849, 98 L. Ed. 1120, reversing per curiam 3 Cir., 1953, 205 F.2d 57.

Although there appear to be no reported cases which contain the identical facts of the instant case (yet the same loading and unloading process must occur countless times during each shipping season), the decisions of federal courts attempting to isolate and define situations wherein the injured employer of an independent stevedoring contractor can proceed against a non-negligent vessel owner as a result of injuries suffered while working on the vessel are numerous. Since the increasing policy of the law is towards liberality in affording the injured longshoreman recourse against the vessel owner,[2] no decision in this area can be well-considered unless the court examines the more important or landmark decisions to determine whether the case before it falls within the liability pattern as established by these cases, and even though the precise factual situation before the court might afford a basis for departure from the more liberal precedents, a non-conforming decision on the District level would be at best tenuous.

In Petterson v. Alaska S.S. Co., supra, 74 S.Ct. 602, 98 L.Ed. 798. The question before the Court of Appeals was, "whether a vessel's owner is liable for injuries received by an employee of a stevedoring company (an independent contractor) on board ship while engaged in the loading of the ship where the injuries are caused by a breaking block brought on board by the stevedoring company." 205 F.2d at page 478. The block was found lying unused on the vessel, and when used by the longshoreman in its proper and customary manner, it broke, causing the injury.[3] The Ninth Circuit held that this fact situation made the vessel unseaworthy, and reversed the district court's finding of seaworthiness. The decision was then affirmed by the Supreme Court, on the basis of the Ninth Circuit's opinion.

In Rogers v. United States Lines, supra, special tub gangs of the stevedoring contractor would use one of the ship's booms, the ship's winches, and a ship's runner on one of the winches, together with the stevedore's land fall and attached runner. One of the unloading tubs swung across the hold and struck the plaintiff. It was conceded that the accident was caused by the land fall runner, operated at the time by stevedores, rewinding on the winch drum,

---

**2.** Seas Shipping Co. v. Sieracki, supra; Alaska S.S. Co. v. Petterson, supra; Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143; Crumady v. The Joachim Hendrik Fisser, 1958, 358 U.S. 423, 79 S.Ct. 445, 3 L. Ed.2d 413, reversing 3 Cir., 249 F.2d 818, and reinstating D.C., 142 F.Supp. 389.

**3.** What actually struck plaintiff is not clear from the opinion, but apparently it was some of the ship's equipment being supported by this block. See discussion in Klimaszewski v. Pacific-Atlantic S.S. Co., 3 Cir., 1957, 246 F.2d 875, 876.

which forced the tub into the plaintiff. The Third Circuit held that the vessel did not adopt the stevedore's land fall runner as an appurtenance of the ship, and thus was not liable to the injured longshoreman on the basis of unseaworthiness. The decision was reversed by the Supreme Court without opinion but clearly on the issue of unseaworthiness, as indicated by Justice Burton's dissent.

These two cases then form the background[4] for the plaintiff's claim in the instant case that the Humberdoc was unseaworthy because of the allegedly defective crane used in the unloading operation. There are of course other cases which, to a lesser degree, illustrate the tendency towards increasing the situations wherein the vessel and its owner are held absolutely liable for injuries to longshoremen engaged in the "ship's service", but since in these cases the instrumentality causing the injury was initially owned by the vessel, they clearly fall within the outer boundaries of liability as established by the Petterson and Rogers cases.

There are several cases decided after Petterson that are worth mentioning for purposes of comparison, in that they either actually, or by suggestion, reject the allegation of unseaworthiness in cases factually similar to the instant case. In Fredericks v. American Export Lines, Inc., 2 Cir., 1955, 227 F.2d 450, the plaintiff-employee of the stevedoring company was standing on a skid assisting in the unloading of the defendant's ship, when the skid broke causing serious injury. The skid was located on a pier adjacent to the ship, and the pier was under lease to the vessel owner. There was no question that the skid was the property of plaintiff's employer, a general stevedoring contractor in charge of the unloading operations. On these facts the court held that there existed no unseaworthiness.[5]

The plaintiff in Roper v. United States, D.C.E.D.Va.1959, 170 F.Supp. 763, was employed by a sub-contracting stevedoring company, and was aboard a vessel owned by the United States assisting in the unloading of its grain cargo. The grain was stored in a grain elevator located alongside the vessel, and leased and maintained by the primary contractor. Attached to the grain elevator was a marine leg which was lowered into the hold of the vessel during unloading operations. The plaintiff was injured due to a defect in the leg. Although the court did not have to reach the unseaworthiness issue, it expressed a strong opinion that the rationale of the Petterson case would not apply to the facts before it.

Is there a reasonable basis for distinguishing the rationale of the Petterson case from the holding in Fredericks v. American Export Lines? We think there is, and that this distinction is determinative of the problem presently confronting this Court. In the first place, the defective equipment in Petterson which caused the injury was of the type commonly found as a part of the

---

4. One case on the District level seems to extend the doctrine of the Petterson case. In Considine v. Black Diamond S.S. Corp., D.C.D.Mass.1958, 163 F.Supp. 107, the plaintiff was operating a "chisel-truck" while unloading the vessel, when, because of a defect in the truck, he was injured. There was no dispute that the truck was the property of the stevedoring company, and that it brought it on the ship, yet the district court found, on the authority of Rogers and Petterson, that the truck was subject to the absolute warranty of seaworthiness. Insofar as this decision may disagree with our reading of the Rogers and Petterson cases, we feel constrained not to follow it. But see Rodriguez v. The Angelina, D.C.D.P.R.1959, 177 F.Supp. 242 at page 244, for a reasonable explanation of why the Considine case may not conflict with the instant decision.

5. Although the longshoreman was standing on the pier when the injury occurred, this should not have been the determining factor in the court's decision, for Strika v. Netherlands Ministry of Traffic, 2 Cir., 1950, 185 F.2d 555 established that a seaman can recover for unseaworthiness even when injured while on shore, as long as the injury was caused by the vessel's unseaworthy equipment.

gear of both the vessel and the stevedore.[6] The same can be said of the equipment causing the injury in Rogers v. United States Lines, supra. Once this duplicity of gear is recognized, it is a fairly easy step to reason that the vessel had integrated or adopted such equipment, at least temporarily, into its own gear, since it is the type that the ship would be expected to furnish its own seaman for use on the ship. In the instant situation it cannot be seriously contended that the crane used in the unloading operation is equipment commonly found among the ship's gear. Both its size and sole function rebel against any argument that a ship might "adopt" or "integrate" such equipment as part of its gear.[7] Since it is clear from the Grillea case, supra, that unseaworthiness can exist only when there is a defect in the hull, gear or stowage of the vessel, if the crane was not adopted or integrated as ship's gear, this cause for unseaworthiness will not lie.

Nor do we feel that the crane can be considered an appurtenance of the ship. Although it is still true that "it may not be a simple matter to define what is and what is not an 'appurtenance of a ship' ",[8] our understanding of a ship's appurtenances does not include this crane. The crane was based on shore, was owned by the independent contractor, and it seems mere accident that this crane, rather than another, was used in this particular unloading operation. The crane never became physically attached to the ship in any manner, nor did it at any time during the unloading process touch any part of the vessel.[9] In fact, it seems that the crane would be imperfectly operated if any of its elongation or attached unloading gear even touched part of the ship during the unloading process. The vessel owner had no control over the choice of the crane, and no authority in the direction of its use, nor was it necessary for the Humberdoc to function as a maritime vessel.

In reaching the conclusion we do, the Court is fully aware of the impact the decision in Seas Shipping Co. v. Sieracki, 1945, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 has had on the policy of the law as regards the right of longshoremen to recover from vessels that cause injuries because of their unseaworthiness.[10] But

6. This common core of usage was emphasized in the opinion of Chief Judge Denman, 9 Cir., 1953, 205 F.2d 478. Cf., Roper v. United States, supra, where this same argument was made by counsel for the government, and is likely the basis for the court's dictum.

7. Tools or equipment, owned and exclusively possessed by an independent contractor, do not automatically become part of the lessee's plant or premises merely because such equipment is indispensable to the work the independent contractor has agreed to perform. Fredericks v. American Export Lines, supra. Compare with Sanford v. Caswell, 5 Cir., 1953, 200 F.2d 830 and DiSalvo v. Cunard S.S. Co., D.C. S.D.N.Y.1959, 171 F.Supp. 813.

8. The Ontario, 1871, 18 Fed.Cas. pages 736, 741, No. 10,543. "Appurtenance" generally means "the right to the use of those things that are essential to the full enjoyment of the premises conveyed." Lee v. City of Park Hill, 295 Ky. 383, 174 S.W. 2d 539, 542. See Brabazon v. Belships Co., 3 Cir., 1953, 202 F.2d 904, where it was held that a thin board placed across a gap between the ship's cargo by an

unidentified person other than the shipowner was not an "appurtenance" of ship as that term is used in connection with the shipowner's responsibility for seaworthiness of the ship's appurtenant gear and appliances.

9. This physical touching of the vessel may have formed the basis for the decision in Considine v. Black Diamond Steamship Corporation, supra note 4. " * * * in the Alaska Steamship case (and other Supreme Court decisions), there was always present some actual material defect in the gear either belonging to the ship, or allowed to be on it; thus the defective device or part of the ship could be, although snugly, fitted into the immemorial definition of unseaworthiness as being a defect in the ship's hull, gear or stowage * * *." Rodriguez v. The Angelina, D.C., 177 F.Supp. 242 at page 244.

10. The Petterson and Rogers cases expanded the scope of equipment that could render a ship unseaworthy. Other cases have increased the number and type of occupations that are included within the term "ship's service". See Pope & Talbot v. Hawn, supra note 2; Torres v.

regardless, we do not read that decision, nor any that have followed, as meaning that the mere fact the stevedore happens to be on ship at the time of the injury places him within the aegis of the Sieracki doctrine, especially when the defective equipment causing the injury is not part of the vessel's hull, gear or stowage, or its appurtenances. Plaintiff maintains that the crane was necessary to unload the ship. But so was the vehicle on the dock which carted the paper away, and the pallets upon which the rolls were stacked, and many other pieces of equipment necessary to facilitate the unloading of the ship. Can we say that all of these are "ship's equipment", so that a defect in any one of them will render the ship unseaworthy?[11] This Court cannot. If the plaintiff in the instant case is allowed to recover for unseaworthiness, what of the operator of the crane, or the driver of the dock vehicle that carts the load away, or the foreman of the crew standing on the pier directing the operations, any one of which could have been injured by reason of a defective crane? Are we justified in extending the doctrine of seaworthiness to cover them, and if so, what then is the reason and justification for the Longshoreman's and Harbor Workers' Compensation Act, 44 Stat. 1424 (1927), 33 U.S.C.A. § 901? We cannot believe that the accidental positioning of the plaintiff-longshoreman in the hold of the ship, rather than dock side, can justify a different result.[12] The reason for the Sieracki decision was stated, "For these purposes (unseaworthiness) he (the stevedore) is, in short, a seaman because he is doing a seaman's work and incurring a seaman's hazards." 328 U.S. at page 90, 66 S.Ct. at page 880. Although McKnight may have been doing a seaman's traditional work, he was not incurring, in our opinion, a seaman's hazard, for none of the traditional unloading gear of the ship, i. e., winches, masts and booms, were, or could have been, used in this unloading operation. Rather, McKnight incurred precisely what he was being paid to incur—a stevedore's hazard—brought about by the very nature of the work he was performing, and by the stevedoring, not ship, equipment being used in the performance. As suggested by Justice Burton in his dissent in Petterson, this Court feels neither obligated nor permitted to hold the Humberdoc unseaworthy on the facts presented to us in this case.

Since, as a matter of law, we find neither negligence nor unseaworthiness on the part of the Humberdoc, her owner, and her crew, defendant Paterson's motion for summary judgment is hereby granted.

---

The Kastor, 2 Cir., 1955, 227 F.2d 664; Read v. United States, 3 Cir., 1953, 201 F.2d 758.

11. See note 7 supra.

12. The location of the injured party was not important to Judge Hand either in Strika v. Netherlands Ministry of Traffic, supra note 5.