**Eddie HUFF, Libelant,**

v.

**MATSON NAVIGATION COMPANY, a corporation, Respondent.**

**No. 28644.**

United States District Court
N. D. California, S. D.

Dec. 18, 1963.

E. Judge Elderkin, Brobeck, Phleger & Harrison, San Francisco, Cal., for respondent.

Dorsey Redland, by Van H. Pinney, San Francisco, Cal., for libelant.

BURKE, District Judge.

This is a libel brought by a longshoreman employee of Matson Terminals, Inc., a stevedoring contractor, against Matson Navigation Company for injuries sustained by libelant at Crocket, California, while employed in the discharge of bulk sugar from the SS Hawaiian Trader, a vessel owned by respondent. The case has been submitted to this court on stipulated facts. Proxi-

mate cause of injury is alleged to have been unseaworthy unloading gear and negligent failure of the vessel to provide libelant with a safe place to work while he was in the hold of respondent's vessel.

Discharge of sugar from a vessel at the sugar refinery of California and Hawaiian Sugar Refining Corporation Limited, where the injuries were sustained, is accomplished by use of four large gantry type cranes which are an integral part of the refinery and permanently attached to the shore. The cranes are owned by the stevedoring company and are never found on vessels as part of ship's gear. They move along tracks laid on a pier owned by and adjacent to the refinery.

Each of the cranes in use at the time in question is constructed with a long "leg" containing a conveyor system consisting of small scoops on a long belt. The cranes move along the track to a location opposite one of a ship's holds and the leg is positioned in the open hatch. The source of power for operation of the cranes is dockside and not the vessel. The conveyor system is used to scoop sugar out of the hold, after which it is transported into the sugar refinery on the conveyor belt. When sugar has been removed from the hold a crane is returned to its original position. The cranes are not required for navigation of a ship and are not necessary for the ship to function as a maritime vessel.

At no time is the leg itself, or the gantry, ever physically attached to a ship, nor do they come into contact with any part of a ship or its appurtenances. No ship's gear is used to move or position the crane or assist in the unloading process in any way. Initially the leg removes sugar by merely burrowing down into the hatch and unloading the sugar falling toward the center. In later stages of the unloading operation it becomes necessary to rig falls attached to scrapers which drag the sugar to conveyors located in the leg. These falls are run through blocks which are attached to the sides of the hold only as a matter of convenience. The scrapers, falls and blocks are component parts of and attached to the crane. The scrapers and falls are also operated by shore side power and movement of the scrapers is remotely controlled by a button box which is operated by one of the longshoremen either on deck or in the hold. Slack of the constant tension maintained on all of the falls can be obtained only by use of a button atop the handle on the right side of the box. It is mandatory, and all operators have been so instructed, that power operating the scraper be turned off before slack is obtained on the falls or when the box is left unattended. The rule is designed to preclude the operator, or anyone else, from inadvertently causing the scraper to move.

When libelant arrived at work on the day he was injured longshoremen on the day shift had completed discharge of the sugar in the upper hold and a crane and scrapers were in position to unload the lower hold. At about 8:30 p. m. one of the falls attached to a scraper broke, requiring reattachment. To accomplish this libelant requested Mr. Collier, a fellow longshoreman, who was in the hold with libelant and operating the button box, to give him some slack. As the request was made the scraper moved toward libelant and struck him.

The only persons who participated in the unloading of the vessel were longshoremen. None of the ship's crew were aboard the vessel during the process and all longshoring operations were accomplished by longshoremen employed by the stevedoring company. No part of the work was under the control, supervision or direction of the officers, owners, or any member of the crew of the SS Hawaiian Trader. Respondent had no control over the choice of crane used and no authority in connection with its use.

Two questions of law are presented. One, whether the injury suffered by libelant was in any way caused by negligence on the part of the vessel owner; and two, whether a shore based crane of the type described is covered by the warranty of seaworthiness.

Although a ship owner may be liable for negligence in ascertaining or failure to ascertain the method and manner by which an independent contractor carries on his activities, Halecki v. United N. Y. & N. J. Sandy Hook Pilots Assn., 2 Cir., 1958, 251 F.2d 708, he is not required to inspect and operate each piece of the independent contractor's equipment to insure that it is in proper working order and he can not be held responsible for the negligence of an independent contractor in the operation of a crane resulting in an injury to a longshoreman working in the vessel. McKnight v. N. M. Paterson & Sons, Ltd., (N.D.Ohio), 181 F.Supp. 434, aff. 6th Cir., 286 F.2d 250, (1961), cert. den. 368 U.S. 913, 82 S.Ct. 189, 7 L.Ed.2d 130 (1961). Certainly the method employed by the stevedore in this action was the usual one, the equipment was a suitable type for use in unloading sugar and there is no indication of anything that might have put the vessel owner on notice of a defect in the unloading apparatus. Thus there is no basis for a finding of negligence.

There is no question that a longshoreman is afforded the benefits of the doctrine of unseaworthiness when "he is doing a seaman's work and incurring a seaman's hazards." Seas Shipping Co. v. Sieracki, 328 U.S. 85, 99, 66 S.Ct. 872, 880, 90 L.Ed. 1099 (1946). However, in the instant case, the longshoreman was *not* incurring the hazards of a seaman, in that none of the traditional unloading gear of the ship, namely winches, masts, or booms was being used in the operation in which he was engaged. McKnight, supra. The cause of the injury to the libelant cannot be attributed to the vessel since the injury was caused solely by an alleged defect in the unloading device itself and not by any of the ship's gear or appurtenances.

The decree will be entered in favor of respondent who shall prepare findings of fact, conclusions of law and decree in conformity with this order.