**C. V. RORIE, Appellant,**

v.

**AVENUE SHIPPING CO., Ltd., et al., Appellees.**

**No. 14986.**

Court of Civil Appeals of Texas.

Houston.

On Rehearing April 27, 1967.

Rehearing Denied May 18, 1967.

Mandell & Wright, Arthur J. Mandell, Houston, for appellant.

Royston, Rayzor & Cook, Bryan F. Williams, Jr., Galveston, for appellees Avenue Shipping Co., Ltd. and Trinder Anderson & Co., Ltd.

McLeod, Alexander, Powell & Apffel, V. W. McLeod, Galveston, for appellee City of Galveston.

Eikel & Goller, Theodore Goller, Houston, for appellee Strachan Shipping Co.

On Motion for Rehearing

WERLEIN, Justice.

On motion for rehearing appellant's motion for leave to file supplemental transcript is granted and this Court's opinion handed down on March 30, 1967 is withdrawn and the following opinion is substituted therefor.

This is an appeal from a judgment entered July 12, 1966 dismissing for want of prosecution appellant's cause of action brought to recover damages for personal injuries sustained by him on September 6, 1960 while working as a longshoreman in the hold of the SS Armagh assisting in unloading bulk ore from such vessel. Appellant filed suit on March 24, 1961 against the City of Galveston and the owners and operators of the ship, Avenue Shipping Co., Ltd. and Trinder Anderson & Company, Ltd., both foreign corporations, sometimes herein called Avenue, inasmuch as their positions in this litigation are identical. Said appellees were duly served with citation and answered. On March 27, 1961 appellant demanded a jury and on April 13, 1961 filed his first amended original petition. On petition of Avenue, the suit was removed to the United States District Court. It was remanded to the State court on motion of the City of Galveston on May 29, 1961. On September 14, 1961 Strachan Shipping Company, appellant's employer, the contract stevedore, sometimes called herein Strachan, filed its answer to the cross-action filed against it by the City of Galveston. The court's docket sheet shows that no action whatever was taken in the case from May 29, 1961 until August 5, 1965.

On August 5, 1965, the court sent out notices to counsel for all parties except Strachan that the case would be dismissed for want of prosecution at the call of the dismissal docket on October 6, 1965 unless good cause was shown in open court at such time why said cause should not be dismissed. Upon receipt of said notice appellant's counsel in writing on September 27, 1965 requested the court not to dismiss the cause of action for the reason that the case was not brought to trial prior to the date of such notice because of the then existing pending claim for compensation under Title 33, Section 901 et seq., generally known as the Longshoremen's & Harbor Workers' Act. It was also stated, "It was felt that this would seriously jeopardize plaintiff's case if a compensation claim would not be disposed of first. This is to advise you that this claim had been disposed of by an award by the Honorable C. D. Calbeck, United States Deputy Commissioner, and, therefore, the case can now go to trial without prejudice to the rights he had under the Act. Our Mr. Kirtley is now requesting the case for trial for your next jury assignment. Every effort is being made to dispose of this case by that date." As a result of such communication, the court retained the case upon the docket of the court. There was no objection or exception to the court's action by any of the parties to the suit. Thereafter there was great activity in connection with the prosecution of the suit up to the time it was dismissed.

On December 14, 1965, as shown by the court's docket sheet, appellant requested a setting of the case for trial on the jury

docket in the December, 1965, term of court, and sent copies of such request to appellees, City of Galveston and Avenue. On December 23, 1965, the suit was continued by agreement. Appellant did not sue Strachan since such company was his employer and he was covered under the United States Longshoremen's & Harbor Workers' Act. Dismissal notices were again sent out by the court in March, 1966. On March 28, 1966 appellant requested a setting for the April term. On April 1, 1966 the attorney for the City of Galveston notified appellant's attorneys that the court had set a pretrial hearing of the case for April 8, and that the case was at the top of the docket for trial during the week of April 25, 1966. On April 8, 1966, the case was continued on motion of appellees. In said letter of April 1, 1966, counsel for the City of Galveston also stated that he would appreciate appellant's counsel picking a day within the next two weeks that he could furnish appellant for the purpose of taking his deposition. On April 4, 1966, counsel for appellant notified counsel for appellees that he could present appellant for deposition at any time upon giving appellant's counsel two to three days' notice.

On May 10, 1966, counsel for appellant wrote the court advising that the last time he appeared before the court, the court had set the case down for trial on June 27, 1966 and for a pretrial hearing on June 10, 1966, and also advising that appellant would be ready to try the case on June 27, 1966. On June 10, 1966, the plea in abatement filed by the City of Galveston was overruled. On the same day the City filed its motion to dismiss and such motion was set for hearing on June 17, 1966. Strachan's and Avenue's motions to dismiss also came up for hearing on June 17, 1966. After hearing such motions and appellant's motion to reconsider such motions to dismiss, filed by appellant on June 23, 1966, the court entered an order on July 12, 1966 dismissing the cause of action and all cross-actions.

The record shows further that on April 6, 1966 appellant filed what is denominated "Plaintiff's First Amended Original Petition" which in fact was his second amended original petition, since his first amended original petition was filed April 13, 1961. On May 12, 1966, appellant filed his request for admissions addressed to the City of Galveston and/or its attorneys by name, and on the same day made request of Avenue for admissions. On May 12, 1966, appellant's counsel filed an answer to the plea in abatement of the City of Galveston. On May 20, 1966, the City of Galveston filed its reply to appellant's request for admissions. On May 27, 1966, appellant filed his third amended original petition. On June 10, 1966, Strachan filed its answer to the cross-action of Avenue. On May 16, 1966, there was filed in the court a stipulation of a compensation lien which was executed by the lawyers representing all the parties in the suit; on April 8, 1966, Avenue filed its first amended original answer and cross-action against the City of Galveston, and impleaded Strachan; on May 12, 1966 appellant filed his exceptions to the answer of Avenue, which appellant asserts in his brief were discussed with the attorneys for Avenue who agreed that the exceptions were good and who stated they would file an amended answer setting out specifically acts of contributory negligence on the part of appellant. The case was set for trial three times and at each setting appellant announced ready for trial. On April 12, 1966, appellant's deposition was taken. On May 18, 1966, the deposition of the witness, W. L. Patterson, was taken.

At the hearing of the motions to dismiss, evidence was adduced consisting of the testimony of the attorneys representing appellant and appellees. The attorney for the City of Galveston testified in substance that this suit grew out of an accident involving a crane which was owned by The Galveston Wharves and that the operator of the crane, Frank McPeters, died on May 8, 1965; that he had not talked to McPeters but had obtained a statement made by him; that he received a notice that the case was set for dismissal in October, 1965, and as he re-

membered the court allowed it to stay on the docket at that time and that he did not object to the court's order doing so.

The attorney for Strachan testified in substance that shortly after the cross-action was filed against Strachan he made a trip to Galveston and talked to a gentleman named Calvin Floeck who was at that time an assistant stevedoring superintendent 'for Strachan, and obtained from him his evaluation and the circumstances of the accident; that after this case was set on the dismissal docket in February, 1966, Mr. Floeck died; that he had been informed approximately six weeks ago that Mr. H. Weber, who was gang foreman of Strachan at the time of the accident, died during the latter part of 1965.

The attorney for Avenue testified in substance that according to the records he had investigated, the SS Armagh was sold in 1961 and according to Lloyd's List Reports on June 2, 1966 such vessel was in the Far East operating between Hong Kong and Japanese ports; that in his opinion there was no practical or feasible way to have reliable people board the vessel to ascertain certain conditions of her structure, especially in connection with Hold No. 5 in which appellant was working on the occasion in question; that after the deposition of appellant was taken on April 12, 1966 it became obvious to Avenue that the physical setup in the hold and its height and dimensions were material in the case inasmuch as the attorney for appellant and appellant were primarily basing their cause of action against Avenue on the ground of failure of the stevedores to use mechanical equipment in the hold, which Avenue had reason to believe would not have been practical because of the size of the hold and the shaft alley which bisected it; that they were not given notice in appellant's original and first amended petitions that this was a specific ground of liability, and it was only after appellant gave his deposition that they felt such physical conditions were pertinent; that he had written his clients in England but that he had not as

yet been successful in getting any response; that they had no statements with information from the officers aboard the ship; that in order to show that the operations in question were not performed in any manner which would render the ship liable, it would be necessary to look to the testimony of employees of the City of Galveston and employees of Strachan, because it was clear from appellant himself that the vessel's personnel did not participate in any of the operations alleged to have caused appellant's injury.

He also testified that Lloyd's Registry states the place where the ship was built, but he had not contacted the vessel's builder to determine whether the blueprints and diagrams of the vessel were available; that in December he did not object to the case remaining on the docket; that he did not attend the hearing of the setting of the case in March or April, 1966, when it was set again for dismissal, and that it was his impression that the April 6 setting was taken off the show-cause docket; and that the attorney for Strachan had obtained a capacity plan of the vessel, or a sister vessel, from the ship builders and had given him a copy of that, but it did not supply the information with respect to the dimensions of the cargo hold in question or of the shaft alley which bisects it or any longitudinal bulkheads in the hold which he considered material to the question as to the manner of discharging the particular cargo.

After hearing appellees' testimony, the court stated that no action was taken in the case from May 29, 1961, until August, 1965, when dismissal cards were sent to all parties informing them that all cases which had been on the docket more than three years would be set up for dismissal on October 6, 1965, and that when such docket was called on that date Mr. Mandell or a member of his firm was present and stated that they did not wish the case dismissed and would proceed with it in the near future, and requested a setting for the December term; that on December 14, 1965, at the call of the docket it appeared

to the court from the information available and discussions with the attorneys that the case was not ready for trial, and it was continued by agreement. The court further stated that no action was taken thereafter until the dismissal docket was set up in March, 1966, for April 6, and that in the meantime appellant's firm submitted a request for setting on March 28 for the April term; that the case was put on the docket for the April term and upon the call of the docket on April 8 was continued again after considerable discussion among the lawyers and the court, and thereupon appellant again requested it be set for the June term of court; and that at the call of the docket on June 10, 1966, appellant announced ready. The court then found as a matter of law that the case had been on file for an unreasonable length of time but stated it would permit appellant to offer testimony to explain the delay.

One of appellant's attorneys testified as to other litigation of his firm and as to appellant's claim under the Longshoremen's & Harbor Workers' Act. He undertook to explain the delay prior to the dismissal notice of August, 1965, by saying that appellant's counsel deemed it advisable to secure appellant's compensation rights before proceeding with the third party case, although he admitted there was no legal reason why both claims could not be prosecuted at the same time.

At the conclusion of the hearing on June 17, 1966, the court stated that it granted the motions for dismissal and found that appellant had failed to show good grounds for the delay in the trial of the case, and also that appellees had been prejudiced thereby. On June 23, 1966, appellant filed his motion to reconsider appellees' motions to dismiss for want of prosecution, which motion was inadvertently omitted by the District Clerk of Galveston County from the transcript filed herein although the affidavit of Mr. Mandell, counsel for appellant, attached thereto, was included in the transcript. Such motion is contained in the supplemental transcript now before us.

Appellant's point of error is: "In passing on a motion to dismiss for want of prosecution, the lack of action at a time of or shortly before presentation of the motion to dismiss governs the court's action." Appellant in his brief does not assert, other than by implication, that the court erred or abused its discretion in dismissing the.case. Nevertheless, appellant has made it clear in his brief that he is complaining of the court's action in dismissing his cause of action and in denying him the valuable right to a trial on the merits under the facts and circumstances developed at the hearing of appellees' motions to dismiss and his motion for rehearing.

It is appellant's contention, as set out in his brief that neither the trial court nor this Court should consider any delay in the case at bar from May 29, 1961 until October 6, 1965, since the court at such latter date retained the case on its docket, thereby indicating that it found there was good cause for the delay up to such date. In Chapman v. Gibson, 8 S.W.2d 711, Tex.Civ. App. 1928, the court said: "The want of action at the time of or just before the dismissal would control on the question of abandonment of the prosecution." Also in David Graham Hall Foundation v. Highland Park Independent School District, 371 S.W.2d 762, Tex.Civ.App.1963, ref., n.r.e., the court, citing Chapman v. Gibson, stated: "In passing on a motion to dismiss on the grounds of abandonment the lack of action at the time of the presentation of the motion or just before the presentation will govern the court's decision." That case was an action for delinquent ad valorem taxes. When the suit was originally filed in 1942 only the taxes for the year 1941 were in question. When the school district and the town filed their amended pleadings in 1958 they sued for additional taxes which had accrued up to the year 1958. The State and County appeared by intervention for the first time in 1959.

■ Based upon the case of Ayers v. D. F. Quillen & Sons, Inc., Del.Sup., 188 A.2d 510, the following statement is made in

24 Am.Jur.2d 51, § 59: "A motion to dismiss for want of prosecution should not be granted if at the time of the motion plaintiff is diligently prosecuting his claim, even though at some prior period of time he had been guilty of gross negligence or neglect." It is our view that after appellees filed their motions to dismiss the case for want of prosecution, the court in considering such motions was not restricted to what had occurred subsequent to October 6, 1965, but could also consider any delay which occurred prior to that date as well as all of the evidence adduced upon the hearing of such motions.

Our Supreme Court has held that a suit may be dismissed for lack of diligence in its prosecution in the past, although the plaintiff's objections to the dismissal at the hearing thereon manifest his intention to prosecute it to judgment. Reed v. Reed, 158 Tex. 298, 1958, 311 S.W.2d 628; Bevil v. Johnson, 157 Tex. 621, 1957, 307 S.W.2d 85; Denton County v. Brammer, Tex.Sup. 1962, 361 S.W.2d 198. In the early case of Roemer v. Shackelford, Tex.Civ.App., 23 S.W. 87, however, Justice Williams, in speaking for the Court of Civil Appeals, stated: "There was no error in the refusal of the court to dismiss the suit in 1889 for want of prosecution. The plaintiffs were prosecuting it, continuances being entered from term to term, generally by agreement. If sufficient diligence was not being used, defendants' remedy was to force plaintiffs to a trial, and not to dismiss for want of prosecution when plaintiffs appeared to represent their cause." Appellant, in relying on Roemer v. Shackelford, supra, and Beasley v. Keck, 280 S.W. 855, Tex.Civ. App.1926, asserts that appellees' remedy was to force appellant to trial, and not to have the suit dismissed for want of prosecution.

In Bevil v. Johnson, supra, the court, speaking through Chief Justice Hickman, used the following language with respect to dismissal of a motion for new trial or an independent suit:

"The matter rests in the sound discretion of the trial court. It is not an unbridled discretion, but a judicial discretion subject to review. Upon review, the question is whether there was a clear abuse of discretion by the trial court. That is a question of law. It is thought that only two decisions by this court need be cited in support of the rule just announced. However, there are many Texas cases cited in support thereof in 15–A Texas Jurisprudence, p. 383, § 41. In the First National Bank of Houston v. Fox, 121 Tex. 7, 39 S.W.2d 1085, 1086, this court held:

"'It is a well-established rule that in the absence of a statutory prohibition, every court has the power to dismiss a suit for want of prosecution. 9 R.C.L., p. 206, § 25; 18 C.J. 1191, 1192, § 110; Hall v. City of Austin, 31 Tex.Civ.App. 626, 73 S.W. 32.'"

The court further stated, with respect to such motion for new trial: "The fact that respondents had no intention to abandon it, or that their attorney had hopes of settling the case, cannot be made a ground for charging an abuse of discretion by the trial court. * * * Petitioners owed no duty to seek a hearing on respondents' motion."

In Callahan v. Staples, 139 Tex. 8, 161 S.W.2d 489, our Supreme Court announced the general rule in this language:

"Such rule as so developed and applied may be explained in these words: Where the defendant in a suit is called to answer and has responded to the call, the duty devolves on the plaintiff to proceed in prosecuting the suit to a conclusion with reasonable diligence, and whenever a delay of an unreasonable duration occurs, such delay, if not sufficiently explained, will raise a conclusive presumption of abandonment of the plaintiff's suit, and a discontinuance results."

See also Crosby v. DiPalma, 141 S.W. 321, Tex.Civ.App.1911, error refused.

It is our view that the instant case is factually distinguishable from the cases of Reed v. Reed, supra; Bevil v. Johnson, supra, and Denton County v. Brammer, supra. In Reed v. Reed, supra, the court stated in substance that a suit may properly be dismissed for past lack of diligence in its prosecution notwithstanding that the plaintiff's objection to the dismissal at the time of the corresponding hearing was in effect a manifestation of his intent to prosecute the suit to judgment. In the Reed case citation was not issued for a period of almost fifteen months after the suit was filed. In the instant case citation was promptly issued and served. Furthermore, appellant did not merely express an intention to prosecute the case. Appellant had been diligently prosecuting the case for approximately eight months prior to its dismissal. In Bevil v. Johnson, supra, there was no activity in the case for a period of some eight years. In Denton County v. Brammer, supra, a condemnation suit, there was an unexplained delay of seven years in the issuance and service of citation upon the condemnor, and an unexplained delay of five years following the condemnees' withdrawal of the award before the condemnees obtained a setting and trial of the case.

It is our view that it was error and an abuse of discretion to dismiss appellant's cause of action under the peculiar facts and circumstances of this case. The testimony of counsel for the City of Galveston shows that the operator of the crane, McPeters, died on May 8, 1965. No attempt had been made to take the deposition of McPeters. Moreover, all of the 8 months' activity in the suit occurred after the death of McPeters without objection on the part of such counsel.

Counsel for Strachan did not make any attempt to take the deposition of Floeck or Weber. It is true that it has been held in this State that where a defendant has been called upon to answer in a law suit, the duty devolves upon the plaintiff to prosecute the suit diligently. This does not mean that the defendant should not also prepare his defense diligently by procuring the testimony of witnesses upon whom he relies. There is no reason why appellant should be charged with the loss of Strachan's witnesses as he had no more reason to expect their deaths than did appellees. Nor was it shown that other witnesses were not available who could give substantially the same evidence as Floeck and Weber.

Counsel for Avenue failed to show that the evidence concerning the structure of the ship and its hold could not be obtained from the builders of the ship. Again no effort was made to take the depositions of any of the owners or operators of the ship. Furthermore, the ship left Galveston sometime after the occurrence in question and was sold in the year 1961. The departure of the ship from Galveston and its sale in all probability made it just as difficult to obtain evidence from the owners and operators thereof in 1961 as in 1965 or 1966. It was not shown when counsel wrote his clients to obtain information. He requested no postponement nor did he file any application for continuance in order to have time to procure evidence from the owners or operators with respect to the structure of the vessel and its hold and the nature and condition of the equipment used on the occasion in question.

We have examined the cases cited by appellee. In none of them was there any activity for a substantial period of time prior to the filing of the motion to dismiss. In the instant case there was not only great activity for a period of nearly eight months prior to the time the suit was dismissed, but there was a diligent effort on the part of appellant to bring the case to trial. He announced ready for trial on three different occasions. This fact distinguishes the instant case from the cases relied upon by appellees.

The record indicates that appellant's counsel was acting in good faith in an effort to best serve his client by not sooner

pressing for trial. Although this suit might have been tried prior to the settlement of appellant's claim for compensation in 1965 under the United States Longshoremen's and Harbor Workers' Compensation Act, appellant's attorney felt that it would be in the best interest of his client not to try the case until his client had reached the maximum state of recovery and the compensation claim had been disposed of. We are also of the opinion that appellant showed reasonable grounds for not sooner pressing for trial in that there was a serious question prior to 1965 as to the liability of a ship owner for injuries to a longshoreman resulting from the use of shore-based equipment. It had been held by several Federal courts that a longshoreman could not recover for injuries sustained by him against the owner of the ship when the equipment causing the injury was shore-based and not of the type commonly found as a part of the gear that the ship would be expected to furnish. In McKnight v. N. M. Paterson & Sons, Ltd., 181 F.Supp. 434, the court held that where an independent contractor used a crane that was not an appurtenance of the ship, and the ship owner had no control over the choice of the crane, the defect in the crane which resulted in injury did not render the vessel unseaworthy and the longshoreman was not entitled to recover from the vessel owner on the basis of unseaworthiness. This judgment was affirmed by the U. S. Circuit Court of Appeals, 6th Cir., 286 F.2d 250.

Appellant's counsel states that he was aware of the fact that there was pending in the U. S. District Court of California the case of Huff v. Matson Navigation Co., 225 F.Supp. 72 (1963). The judgment in such case was reversed by the U. S. Circuit Court of Appeals, 338 F.2d 205, 9th Cir. 1964, and certiorari was denied by the Su-

preme Court of the United States, 380 U.S. 943, 85 S.Ct. 1026, 13 L.Ed.2d 963, on March 15, 1965. This case held that the liability of the owner of the vessel to the stevedore's longshoreman who was injured when hit in the hold of a vessel by a scraper which was a part of the stevedore's dockside crane used to unload bulk sugar from the vessel, could be predicated on a claim of unseaworthiness. Thus, the question as to the liability of the ship owner for shore-based equipment was not resolved until 1965. Appellant's counsel states that his duty to his client would have been substantially impaired had he prosecuted his client's suit prior to the time that such law question had been finally decided by the Supreme Court of the United States. See Spann v. Lauritzen, 344 F.2d 204 (3rd Cir. 1965) reversing the judgment of the U. S. District Court, 237 F.Supp. 569, certiorari denied 382 U.S. 1000, 86 S.Ct. 531, 15 L.Ed.2d 489 (1966), holding the ship owner responsible for a longshoreman's injuries caused by a shore-based crane. See also Deffes v. Federal Barge Lines, Inc., 361 F.2d 422 (Ct. of App., 5th Cir. 1966).

█ It is our view that appellant showed reasonable grounds for delay in bringing the case to trial in view of the unsettled state of the law prior to 1965. We are of the opinion also that the case should not have been dismissed for want of prosecution in view of the tremendous amount of activity in the case for some eight months prior to its dismissal, during which time none of the appellees or their counsel objected but instead measurably participated.

Judgment of the Trial Court is reversed and the cause is remanded for trial on its merits.

COLEMAN, J., not sitting.