Thomas McQUISTON

v.

FREIGHTERS AND TANKERS STEAM-
SHIP COMPANY.

No. 637.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

May 21, 1963.

Arthur Cobb, Cobb & Brewer, Baton Rouge, La., for libelant.

Leon Sarpy, Paul A. Nalty, Chaffe, McCall, Phillips, Burke, Toler & Hopkins, New Orleans, La., for respondent.

WEST, District Judge.

This is a libel against Freighters and Tankers Steamship Company, the owner and operator of the vessel NORTH MONARCH, brought by libelant, Thomas McQuiston, a longshoreman. Libelant injured his back while working in the employ of Rogers Shipping and Terminal Co. as a longshoreman, in the process of loading grain, aboard the NORTH MONARCH. It is the contention of libelant that his injuries were caused by failure of respondent to furnish a seaworthy vessel and seaworthy appurtenances, or in the alternative, by the negligence of the respondent in the following respects: "(1) in maintaining an insufficient number of crew members to assist libelant in trimming or shoveling the grain in the hold of the ship; (2) by failing to instruct libelant properly in the manner in which said grain should be shoveled or trimmed; (3) by instructing libelant to use an improper method or to strain and lift too great a weight in the circumstances of shoveling or trimming the grain in the hold; (4) by furnishing libelant with a shovel for trimming the grain which was of too great a capacity and caused incessant strain or wrenching strain upon libelant's back as he was shoveling the grain while standing in the grain in the hold of the ship; (5) in not furnishing a seaworthy vessel."

After the libel was filed the testimony of libelant was taken by deposition. Thereafter this motion was filed by respondent seeking a summary judgment on the grounds that there existed no material issue of fact to be determined at the trial of the case. After hearing arguments of counsel, the Court granted libelant two weeks within which to file countervailing affidavits, or to file other testimony or evidence in support of his claim. Libelant then filed several affidavits, together with an amended libel, none of which, in the opinion of the Court, in any way strengthened his claim.

After considering the record, together with the affidavits and testimony taken, and the arguments of counsel, it is the opinion of this Court that respondent is entitled to a summary judgment in its favor, dismissing libelant's claim. The facts in this case are clear and undisputed. At the time of the injury complained of, libelant was working as a longshoreman for Rogers Shipping and Terminal Company. On the particular day in question, he was assigned to the vessel NORTH MONARCH to assist in loading or trimming grain, which was being taken aboard. After a certain amount of the grain was blown into the hold, it was the job of the longshoremen, by the use of shovels, to trim, or relocate the grain in the hold of the ship in accordance with loading instructions. At the time of the accident, libelant was working in the No. 6 center tank under the aft end of the bridge. While he was in the process of shoveling, he got a "catch" or a "twist" in his back. His testimony unequivocally reflects that there were no members of the ship's crew giving orders or assisting in any way in the loading operation. All instructions received by libelant and the other members of the longshoremen's crew were received from a foreman of Rogers Shipping and Terminal Com-

pany, his employer. The shovel which was being used by libelant was a common, ordinary shovel, owned and furnished by Rogers Shipping and Terminal Company, and there was no ship's equipment of any kind being used in this operation. Furthermore, it is the unquivocal testimony of libelant that there was no breakdown of any of the ship's gear or equipment, and there was nothing defective about the shovel being used by libelant. His only contention is that the particular shovel being used was a large shovel which enabled him to pick up more grain than he was able to handle. In this connection libelant testified as follows:

"Q. Now, this shovel that you were using, is the usual size shovel that you use for trimming?

"A. Well, now, I wouldn't say that it is or I wouldn't say that it's not."

He then described several types of shovels available at the time and said that he was using the largest one. "In fact about it, there was about five or six of the boys in the tank with me that were using the same shovel."

"Q. And finally, just to clarify this * * * now, at the time of your injury, none of the ship's officers or crew members were involved with you in this work, and it was done primarily under the control of Rogers Terminal?

"A. That's right.

"Q. And the shovel that you were using was the only piece of equipment that was involved?

"A. That's right, that was all.

"Q. That was supplied to you by Rogers Terminal?

"A. By Rogers Terminal.

"Q. And that none of the ship's gear or anything aboard the ship was defective in any manner, that would cause your injury?

"A. That I know of, I wouldn't say it, because I don't * * * I don't * * * that I know * * * so far as I know.

"Q. So far as your injury is concerned, there was nothing defective that caused your injury. Your injury was brought about, primarily, by shoveling this and twisting your back while you were shoveling this corn?

"A. Yes, I would say so."

■■ There is no dispute about these facts. The only complaint of this libelant is that while he was employed, as a longshoreman, by Rogers Shipping and Terminal Company, and while using a shovel supplied by Rogers, he twisted his back, not because the shovel was defective, but because he apparently either picked up more grain than he could handle, or, in some other way misused the shovel which he was using. This certainly could by no stretch of the imagination be the basis of a claim against the shipowner for either unseaworthiness or negligence.

■ Insofar as the first three alleged grounds of negligence are concerned, it is settled law that where the defendant shipowner was not in charge of the loading operations, but had contracted the loading operations to a stevedore, liability for injury to an injured longshoreman must depend upon proof of defective or improper equipment. Arena v. Luckenbach, 1 Cir., 279 F.2d 186, cert. denied, 364 U.S. 895, 81 S.Ct. 222, 5 L. Ed.2d 189.

■ A general ability on the part of the shipowner to control the work in order to insure that it is satisfactorily completed in accordance with the requirement of its contract and in accordance with the requirements of its ship, does not in itself make the shipowner liable for harm resulting from negligence in conducting the details of the work. A shipowner could not be found liable, despite adequate equipment, solely because of its failure to supervise the

operation where the work is being performed under contract by a stevedoring company. Berti v. Compagnie de Navigation Cyprien Fabre, 2 Cir., 213 F.2d 397; Gallagher v. United States Lines, 2 Cir., 206 F.2d 177. Although a shipowner is liable in negligence for any lack of reasonable care in ascertaining the method and manner in which an independent contractor carries on his activities with respect to loading or unloading a ship, he has neither the right nor duty to supervise an independent contractor or to instruct him as to instrumentalities and methods adopted in the loading or unloading process. McKnight v. N. M. Paterson & Sons, Limited, D.C., 181 F. Supp. 434.

 Thus, the first three contentions of the plaintiff are clearly without merit. As to the fourth allegation of negligence, namely, that the respondent was negligent in failing to furnish proper shovels, this contention also is without merit. First of all, the shipowner did not furnish the shovels in this instance. Even though libelant has filed several affidavits to the effect that shovels are a traditional part of a ship's equipment, nevertheless, there is no evidence of any kind in this record to even indicate that the shovel involved was in any way defective or inadequate for the purposes for which it was intended. Absolute perfection is not required under the doctrine of seaworthiness. It merely requires reasonable fitness for intended use. Pinto v. States Marine Corp. of Delaware, 2 Cir., 296 F.2d 1; Blier v. U. S. Lines Co., 2 Cir., 286 F.2d 920. A shipowner is not liable to an injured longshoreman resulting from his improper use of seaworthy equipment. Imperial Oil Ltd. v. Drlik, 6 Cir., 234 F.2d 4; Billeci v. United States, et al., D.C., 185 F.Supp. 711; Freitas v. Pacific-Atlantic Steamship Company, 9 Cir., 218 F.2d 562.

 The burden of proving unseaworthiness of a vessel or negligence on the part of a shipowner, and that such unseaworthiness or negligence was the proximate cause of the injury complained of rests entirely upon the libelant. Freitas v. Pacific-Atlantic Steamship Company, 9 Cir., 218 F.2d 562.

 This is a classic example of a longshoreman being injured in the course and scope of his employment, and thus having, as his exclusive remedy, the relief provided for by the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq.

Respondent's motion for summary judgment will therefore be granted.