**Howard S. GOODRICH, Libelant,**

v.

**CARGO SHIPS AND TANKERS, INC., Respondent.**

**No. 7189, Division D.**

United States District Court E. D. Louisiana, New Orleans Division. April 26, 1965.

<small></small>

Kierr & Gainsburgh, Jack C. Benjamin, Eldon E. Fallon, New Orleans, for libelant.

Chaffe, McCall, Phillips, Burke, Toler & Hopkins, Paul A. Nalty, Leon Sarpy, New Orleans, for respondent.

AINSWORTH, District Judge.

Presented for decision in this case is a seaman's claim for damages against his employer-shipowner based on the alleged negligence of the respondent and the unseaworthiness of its vessel, the SS METEOR, under the Jones Act (46 U.S. C.A. § 688) and General Maritime Law. Libelant also seeks recovery for maintenance and cure and damages against respondent for failure to pay maintenance and cure.

Libelant, Howard Goodrich, was employed on November 15, 1961 as an ordinary seaman aboard the SS METEOR. The vessel departed from the United States for various foreign ports, the last of which was Augusta, Sicily, and from which the vessel sailed on January 1, 1962. The first American port on the return voyage was Houston, Texas. On January 23, 1962, libelant reported to the chief officer, John Zsitanko, that he had tripped over a steam guard. At this point of the voyage, the vessel was some 150 miles from the Galveston sea buoy in the Gulf of Mexico. Libelant was given epsom salts and Merthiolate to treat a "slight bruise on left leg and swollen ankle." The SS METEOR reached the Houston dock on January 26, 1962, and the voyage terminated at 2400 hours of that day.

On January 28, 1962, libelant went to the United States Public Health Service Hospital in Houston, Texas, for treatment. He was asked if he wished to remain in the hospital or return to the ship, and he stated that he wanted to return to the ship so that he could make another voyage on the SS METEOR. He was then, at his request, given a "fit for duty slip" by the hospital.

On the same afternoon libelant engaged in a drinking escapade with some of his fellow crew members and became involved in a fist fight which resulted in his being knocked down from a barstool and having his head bloodied. Early in the morning of January 29, 1962, libelant returned to the SS METEOR whereupon he was fired by the boatswain for being intoxicated and unable to perform his duties.

On February 5, 1962, libelant went to the United States Public Health Service Hospital in New Orleans, Louisiana, where he was treated for a "hit and turned ankle" and had his *right* ankle

placed in a cast. Two days later he went back to the hospital and the medical records show that he had taken the cast off because "that intern didn't put it on right." He discontinued using crutches at that time. On February 15, 1962, libelant was further examined and on that date was discharged against medical advice. He was next seen at the hospital on March 8, 1962, and the medical records show that his sprained right ankle was healed.

Libelant, through counsel, has abandoned his claim for maintenance and cure and for damages resulting from respondent's failure to pay same. We consider, therefore, the claim based on negligence under the Jones Act and unseaworthiness under the General Maritime Law.

■ The burden of proving unseaworthiness of the vessel or negligence on the part of the shipowner is entirely upon libelant. In addition, libelant must prove that the unseaworthy condition was the proximate cause of his injury, or that the negligence of respondent caused in whole or in part the injury complained of. Freitas v. Pacific-Atlantic Steamship Company, 9 Cir., 1955, 218 F.2d 562; McQuiston v. Freighters and Tankers Steamship Co., E.D.La., 1963, 217 F. Supp. 701, affirmed 5 Cir., 1964, 327 F. 2d 746.

■ Under the General Maritime Law, the shipowner is bound to the warranty of seaworthiness. This obligation to furnish a seaworthy vessel is absolute and nondelegable. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), and authorities cited therein. However, while this duty is absolute, the shipowner is not required to furnish an accident-free ship. He is bound only to furnish a vessel and appurtenances reasonably fit for their intended use. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960); Boudoin v. Lykes Brothers Steamship Co., 348 U.S. 336, 75 S.Ct.

382, 99 L.Ed. 354 (1955); The Silvia, 171 U.S. 462, 19 S.Ct. 7, 43 L.Ed. 241 (1898).

■ Libelant has not carried the burden of proof by a preponderance of credible evidence.[1] At best, he has proved only that an accident occurred in the course of his duties aboard respondent's vessel. The mere fact that an accident occurs and a seaman is injured, without more, does not establish that a vessel is unseaworthy. Mosley v. Cia. Mar. Adra, S. A., 2 Cir., 1962, 314 F.2d 223, 229, cert. denied 375 U.S. 835, 84 S.Ct. 52, 11 L.Ed.2d 65 (1963).

Libelant contends that the block at No. 3 hatch was defective but produced no evidence whatever that this block was in any way a cause of his injury. In fact, libelant was in the process of changing the block when the alleged accident occurred.

Libelant next contends that he tripped over the steam guard rail at No. 3 hatch but does not contend that the steam guard was in any way unfit. Indeed without the steam guards to protect seamen from the steam pipes leading to the winches the SS METEOR would be an unseaworthy vessel. Libelant makes numerous contradictory statements and makes reference to oil and grease around the winch at No. 3 hatch. However, when questioned as to how close he fell to the winch, he stated at page 8 of his deposition:

"I didn't fall close to the winch. I fell off that little guard rail that's on there. They have a little, there is a little guard rail there. I fell over that and fell down to the deck on the other side of the guard rail."

The evidence submitted shows that libelant *tripped* over the guard rail and on this point he is not contradicted. His theory of having "slipped" is an apparent afterthought and on this point libelant is contradicted by his own testimony and that of the chief mate and medical officer aboard the SS METEOR.

1. Libelant's evidence is solely confined to testimony given by him in his deposition. He did not testify in person or produce any other supporting or corroborative witness.

As to claimed negligence, he has failed to prove that respondent was guilty of the slightest negligence in causing his injury. In short, through his own negligence, libelant tripped over a steam guard rail that was in all respects fit and proper. The only negligence which this court can find from the evidence is that of libelant himself, and but for his neglect to perform his duties in a seamanlike manner this accident would not have occurred.

Libelant's deposition itself is replete with inconsistent statements. He claims the injury occurred while the vessel was lying in the Mississippi River. He makes this claim twice at different places in his deposition. The Deck and Bridge logs show that the SS METEOR did not enter the Mississippi River on the return voyage. The first United States port was Houston, Texas, and at the time of the accident the vessel was some 150 miles from the Galveston sea buoy in the Gulf of Mexico.

These facts, coupled with libelant's misconduct in Houston just after receiving a "fit for duty" slip, considered in conjunction with libelant's previous "accidents," a detail of which runs for some 11 pages under cross-examination (pages 26 through 37 of libelant's deposition), justify this court's rejection of libelant's theory of the accident.[2]

Furthermore, libelant has failed to prove that the injury to his *right* ankle for which he received treatment at the Public Health Service Hospital in New Orleans was in fact the same injury which he received aboard the SS METEOR. The medical log states:

"Jan. 28—2000—Goodrich—O. S. Claims he tripped over steam guard at #3 hatch while working on cargo gear—*slight bruise on left leg and swollen ankle*—was given epsom salts and merthilate." (Emphasis supplied.)

In any event, libelant has failed to prove, by a preponderance of credible evidence, that his injury (right or left ankle) was in any way caused by the unseaworthiness of the SS METEOR or by any negligence on the part of respondent.

Accordingly, judgment must be rendered for respondent, Cargo Ships and Tankers, Inc., dismissing all of libelant's claims.

Decree accordingly.

---

2. In a similar case, Ramos v. Matson Navigation Company, 9 Cir., 1963, 316 F.2d 128, the court held: "We have long since abjured the notion that a court cannot reject 'uncontradicted' testimony that it finds not worthy of belief. * * * The rule is equally applicable to testimony given by deposition (Lau Ah Yew v. Dulles, 9 Cir., 1958, 257 F.2d 744, 746), * * *."